MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 136
Docket:      Cum-19-16
Submitted
  On Briefs: July 18, 2019
Decided:     August 15, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, HJELM, and HUMPHREY, JJ.

BOARD OF OVERSEERS OF THE BAR

v.

SETH T. CAREY

PER CURIAM

[¶1]  In November of 2016, Seth T. Carey—an attorney admitted to the Maine Bar—consented to the entry of a disciplinary order (*Brennan*, *J.*).  The order established that Carey had committed multiple violations of the Maine Rules of Professional Conduct, which prescribe ethical standards for lawyers, and imposed a two-year suspension of Carey's law license—a suspension that was itself suspended contingent on Carey's compliance with nearly thirty specific conditions.  In April of 2018, in response to an "expedited petition" filed by the Board of Overseers of the Bar to activate the suspended portion of Carey's suspension, a single justice (*Warren, J.*) suspended Carey's law license, effective immediately and pending a full hearing, after making an initial finding that Carey had engaged in conduct that led to the issuance of a protection order

2

against him.  *See* M. Bar R. 24(a)-(b).  The Board later filed a new disciplinary information against Carey, alleging that he had committed other violations of the Maine Rules of Professional Conduct.  *See* M. Bar R. 13(g)(1).

[¶2]  In September of 2018, following a three-day hearing on the pending matters, the single justice entered an order finding that Carey had, on numerous occasions, engaged in criminal conduct and violated court orders, all in contravention of the Rules.  After holding a sanctions hearing several months later, the single justice entered an order suspending Carey's license to practice law for three years, *see* M. Bar R. 13(g)(4), 21(a)(1), (a)(3), (b)(6), with certain conditions to be satisfied while the suspension is in effect.  Carey appealed to us,[1] *see* M. Bar R. 13(g)(4), and we affirm the judgment.

## I.  BACKGROUND

[¶3]  The following facts are drawn from the findings of the single justice, all of which are supported by competent record evidence, *see Bd. of Overseers of the Bar v. Prolman*, 2018 ME 128, ¶ 2, 193 A.3d 808, and from the procedural record.

---

[1]  Carey's notice of appeal designates only the court's December 2018 order on sanctions as the order from which he is appealing.  In addition to Carey's assertions of error with respect to that order, however, he also challenges the underlying factual findings contained in the September 2018 order, which he did not designate in his notice of appeal.  *See* M.R. App. P. 2A(b)(1) (stating that a notice of appeal must "designate the judgment or part thereof appealed from").  We address the latter challenges nonetheless.

[¶4] Carey is no stranger to attorney disciplinary proceedings. Since he was admitted to the Maine Bar in 2006, his license to practice law in this State has been suspended no fewer than three times—not including the most recent suspension order—for violations of the rules of ethics governing attorney conduct. In 2009, Carey was sanctioned for misconduct twice. First, his license was suspended for six months and one day after a single justice concluded that Carey had, among other things, improperly communicated with other lawyers' clients, demonstrated "a profound lack of candor and a clear willingness to mislead [Bar Counsel] and the [Grievance Panel]," and exhibited "a lack of fundamental skills, competencies, and preparation in trial work in general, and criminal defense in particular"—all in violation of the Maine Bar Rules.[2] *Bd. of Overseers of the Bar v. Carey*, BAR-08-04, at 6-7 (Feb. 12, 2009) (Mead, J.). The single justice also noted that Carey's testimony at the disciplinary hearing was "evasive, combative, and accusatory." *Id.* at 5.

[¶5] Later in 2009, Carey was sanctioned for other misconduct he had committed while the earlier disciplinary action was pending. *Bd. of Overseers*

---

[2] Until August of 2009, the Code of Professional Responsibility, which set out the ethical standards imposed on Maine lawyers, was found in Maine Bar Rule 3 (Tower 2008). That Code was abrogated and replaced by the Maine Rules of Professional Conduct, which are presently in effect. *See* M.R. Prof. Conduct Preamble (1); *see also Snow v. Bernstein*, 2017 ME 239, ¶ 13, 176 A.3d 729.

4

*of the Bar v. Carey*, BAR-08-10 (Oct. 6, 2009) (Mead, J.).  The second order was entered by agreement on the basis of a complaint made by an acquaintance of Carey that, during a visit to her home, Carey became emotionally out of control and, among other things, acted violently toward her puppy.  *Id.* at 1-3.  Without admitting to all the conduct alleged in the complaint, Carey agreed that "his conduct was unworthy of an attorney in violation of then applicable M. Bar R. 3.1(a)," and the single justice imposed a sixty-day suspension of Carey's license to practice, to run concurrently with the earlier suspension.  *Id.* at 3-4.

[¶6]  That brings us to the first of the two proceedings directly at issue here.  In November of 2016, a single justice entered an agreed-to order finding that, over the course of several years, Carey had violated the Maine Rules of Professional Conduct in several respects.  *Bd. of Overseers of the Bar v. Carey*, BAR-16-15, at 1-8 (Nov. 21, 2016) (Brennan, J.).  First, based on a grievance complaint filed against Carey by a judicial officer, the single justice found that Carey had "failed to follow applicable rules, procedures and directives issued by the trial courts," thereby demonstrating, among other things, a lack of core competence and violations of numerous Rules of Professional Conduct: Rule 1.1

(competence);[3] Rule 1.3 (diligence);[4] Rules 3.3(a)(3) and 3.3(b) (candor toward the tribunal);[5] and Rules 8.4(a) and 8.4(d) (misconduct).[6] *Id.* at 3. Second, the single justice found that Carey had engaged in professional misconduct during a workers' compensation proceeding and again violated rules pertaining to basic attorney competence and diligence. *Id.* at 6; *see* M.R. Prof. Conduct 1.1, 1.3; *see also supra* nn.3-4. Finally, the single justice determined that Carey had failed to abide by the rules governing client trust accounts (IOLTA), which the single justice found particularly troubling because, "as an attorney licensed for more than ten years, Attorney Carey knew or should have known that he could not commingle funds or draw upon his IOLTA account for personal and other non-client expenses." *Bd. of Overseers of the Bar*

---

[3] Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[4] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[5] Rule 3.3(a)(3) provides that "[a] lawyer shall not knowingly . . . offer evidence that is false," and Rule 3.3(b) provides that "[a] lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."

[6] Rule 8.4(a) provides that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate any provision of either the Maine Rules of Professional Conduct or the Maine Bar Rules, or knowingly assist or induce another to do so, or do so through the acts of another," and Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

6

*v. Carey*, BAR-16-15, at 8 (Nov. 21, 2016). Although not explicitly finding that Carey had violated the rules governing the management of client trust accounts, the single justice determined that Carey's conduct had, once again, demonstrated his incompetence as an attorney in violation of Rule 1.1, *see supra* n.3. *Bd. of Overseers of the Bar v. Carey*, BAR-16-15, at 8 (Nov. 21, 2016).

[¶7] Based on these violations, committed against the backdrop of a history of serious and repeated misconduct, the single justice entered an order suspending Carey's license to practice for two years.[7] *Id.* at 8-9. That suspension, however, was itself suspended so that Carey could continue to practice law subject to twenty-eight conditions. *Id.* at 9-17. In pertinent part, the conditions required Carey to commence treatment with a psychiatrist[8] and "follow the recommendations of the psychiatrist and any other treatment providers he may subsequently be referred to," and to "refrain from all criminal conduct." *Id.* at 14-15.

---

[7] Despite agreeing to the disciplinary order, less than two months later Carey filed a civil complaint against various individuals and entities that were directly or indirectly involved in the disciplinary proceeding. *See Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 12, 192 A.3d 589. Ultimately, the court (*Anderson, J.*) granted motions to dismiss parts of the complaint and motions for summary judgment on the remaining parts, all of which we affirmed on Carey's appeal. *Id.* ¶¶ 1-2.

[8] The 2016 order was later amended to allow Carey to commence treatment with a psychologist, rather than a psychiatrist.

[¶8]  In April of 2018, while Carey was still subject to the conditions established in the 2016 order, the Board learned that he had engaged in conduct that resulted in an order for protection from abuse being entered against him the previous month by the District Court (Rumford, *Mulhern, J.*).[9] The Board petitioned the court to immediately activate the 2016 suspension of his license.  Later that month, after holding a hearing, the single justice (*Warren, J.*) entered an order suspending Carey's license pending the final resolution of the case based in part on a preliminary finding that Carey had engaged in criminal activity, namely, unlawful sexual contact and assault.[10]  *See* M. Bar R. 24(b).

---

[9]  The Board learned of the order of protection entered against Carey when, pursuant to a specific condition of the 2016 order requiring him to provide such information, he copied the Board on an email he sent to the director of the Maine Assistance Program for Lawyers and Judges.  Carey provided the notice by stating, "I have been falsely convicted of abuse in a PFA."  It bears note that two judicial officers, in two different legal proceedings, found the protected person's account of Carey's wrongful conduct to be credible.  Despite this, and despite the firmly established principle that we defer to credibility determinations made by fact-finders at trial, *see Doe v. Plourde*, 2019 ME 109, ¶ 8, ---A.3d--- (stating that "determinations of the weight and credibility of testimony and evidence are squarely within the province of the fact-finder" (quotation marks omitted)), on this appeal Carey aggressively asserts that the testimony of the protected person should not be believed.

[10]  Although the single justice issued the order of interim suspension at a hearing on the Board's petition to activate the suspended suspension ordered in 2016, it appears that the interim suspension was based on the separate authority created in Rule 24, which authorizes an interim suspension when the evidence demonstrates that the lawyer violated the Rules of Professional Conduct in a way that imminently threatens a client, the public, or the administration of justice. *See* M. Bar. R. 24(a)-(b). Regardless of the particular authority, the result was the same—Carey was prohibited from practicing law pending the entry of a final judgment.

8

[¶9]  After further investigation, the Board discovered other potential criminal conduct and violations of the Rules, as well as additional instances of Carey's noncompliance both with the conditions of the 2016 order and with the single justice's April 2018 order of interim suspension.  The Board subsequently filed a separate disciplinary information, later amended twice, framed in five counts: a claim based on Carey's conduct that resulted in the protection order and Carey's subsequent attempt to induce the protected person to recant (Count 1); a grievance complaint filed against Carey by a former client (Count 2);[11] a claim that Carey violated the court's April 2018 order of interim suspension (Counts 3 and 5); and a claim that Carey violated conditions of the November 2016 order (Count 4).

A.    The Factual Findings

[¶10]  After holding a three-day hearing on the Board's disciplinary information in August of 2018, the single justice entered an order determining, by a preponderance of the evidence, *see* M. Bar R. 14(b)(4), that Carey had violated the Rules of Professional in Conduct in the following ways.

---

[11] On the second day of the subsequent disciplinary hearing, the court granted the Board's motion to dismiss Count 2.

1.    Criminal or Unlawful Conduct (Count 1)

[¶11]  In the spring of 2017, Carey rented a room in his house to a woman whom he had met years before when she was a client of his father, who is also an attorney.[12]  While the woman lived in his house, Carey propositioned her for sex a number of times, but each time the woman declined, at one point telling him that his repeated advances were offensive.

[¶12]  After moving out of Carey's house in late 2017, the woman lived with her boyfriend, but that relationship became abusive, and the woman returned to Carey's home.  Carey agreed that she could stay in his home without paying rent in exchange for cleaning and doing other work around the house, but as part of the arrangement he expected the woman to have sex with him, and he continued to ask her to do so.  Having just left an abusive relationship, the woman was dependent on Carey for housing, so despite Carey's unwelcome advances, she had little choice but to stay there.

---

[12]  The Board alleged in its disciplinary information that, on at least one brief occasion, Carey had acted as substitute counsel for the woman and therefore the woman was a former client of Carey's, binding him to the rules of conduct associated with that attorney-client relationship.  *See* M.R. Prof. Conduct 1.9 (duties to former clients).  The single justice disagreed.

Additionally, Carey and the woman developed a brief personal relationship at some point during the fall of 2016, but it had ended before the woman moved into Carey's house.

[¶13] While the woman lived in Carey's house during both periods, Carey made unwanted physical advances toward her a number of times, including one time when he entered her bedroom at night and touched her legs and between her thighs, and another time when he stepped in front of her while she sat on the couch, pulled her head against his crotch, and in crude terms asked her to perform oral sex on him. Each time, the woman rebuffed Carey.

[¶14] In March of 2018, Carey evicted the woman from his house, admitting in a text message that he was doing so in part because she would not have sex with him. Following her eviction, based on Carey's unwanted physical advances while living in the home, the woman filed a complaint for protection from abuse. After a lengthy trial held that same month, the District Court (*Mulhern, J.*) issued an order of protection against Carey.

[¶15] Based on the evidence presented during this disciplinary proceeding, the single justice determined that Carey's conduct toward the woman "would constitute criminal or unlawful conduct that would qualify as unlawful sexual touching and domestic assault under 17-A M.R.S. §§ 260(1)(A), 251(1)(G), and 207-A(1)(A) [(2018)]" and "reflects adversely on Carey's trustworthiness and fitness as a lawyer." The single justice concluded that

Carey's conduct constituted a violation of Maine Rule of Professional Conduct 8.4(b).[13]

[¶16] There is more. Carey had appealed the protection order.[14] While the appeal was pending, Carey met with counsel for the woman and, in what Carey later described as an offer of "settlement," provided the attorney with a number of documents he had drafted. One of the documents contained a statement that the woman would sign and submit to the single justice in this matter and to the Board, stating that "things have been blown out of proportion and Seth Carey did not abuse me." Another document drafted by Carey was an agreement that would require the woman to file a motion in the disciplinary proceeding to "vacate the prosecution" of Carey. That agreement would also require the woman to file a motion to vacate the findings of abuse made by the District Court in the protection proceeding,[15] and it provided that once the protection order was vacated, Carey would convey title to his car to the woman. Pursuant to the proposed agreement, if Carey's law license were reinstated by

---

[13] M.R. Prof. Conduct 8.4(b) provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal or unlawful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[14] We affirmed the judgment on appeal. *Doe v. Carey*, Mem-18-79 (Oct. 18, 2018).

[15] Carey also presented the woman's attorney with a draft of the motion to vacate the findings of abuse that he wanted the woman to file in the District Court protection action.

October 1, 2018, Carey would pay the woman $1,000. All of the terms that Carey proposed were to be made subject to a nondisclosure provision stating that "[n]one of the details of any of this agreement are to be released to the public or anyone not associated with this agreement."

[¶17] At the disciplinary hearing, the single justice rejected Carey's testimony that the documents constituted a settlement offer, finding that that explanation did "not pass the straight face test" because Carey's offer was directed at the attorney disciplinary proceeding, which the woman had no authority to settle. Based on this evidence, including Carey's attempts to conceal his misconduct through a nondisclosure agreement, the single justice reasonably determined that Carey's actions "constituted an attempt to induce [the woman] to provide false information" and "an attempt to induce a witness to withhold testimony, information, or evidence" in violation of statutes prohibiting tampering with a witness or informant, *see* 17-A M.R.S. § 454(1)(A)(1)-(2) (2018). The single justice concluded that, because "there can be no dispute that Carey's conduct reflected adversely on his honesty, trustworthiness, and fitness as a lawyer" and "was prejudicial to the administration of justice," Carey had violated Rules 8.4(b) and (d), *see supra* nn.6 & 13.

2.	Violations of the 2016 Order of Suspension (Count 4)

[¶18]  The single justice found that Carey had violated several conditions of the 2016 disciplinary order.  As we have described above, Carey's conduct included unlawful sexual touching, domestic assault, and tampering with a witness.  In addition to being independent violations of the Rules, this conduct also constituted breaches of a condition of the 2016 disciplinary order that required Carey to "refrain from all criminal conduct."

[¶19]  The single justice also found that Carey had not complied with the condition of the 2016 order that required him to be evaluated by a psychologist, *see supra* n.8, to "follow the recommendations of the psychologist and any other treatment providers he may be subsequently referred to," and to "receive consistent treatment from those providers to promote continuity of care."  The single justice noted that the psychologist who evaluated Carey had concluded that Carey "demonstrates a personality disorder marked by a tendency toward grandiosity, suspiciousness, belief that persons who criticize him are engaged in a vendetta or conspiracy against him, argumentativeness, holding grudges, difficulty expressing anger in a socially appropriate manner, and a tendency to blame others for any setbacks."  The psychologist recommended that Carey "engage in psychotherapy with a clinical psychologist for no less than

14

12 weeks" to address some of these issues and "consult a licensed psychiatrist and comply with any recommended psychiatric medications for ADHD." Although Carey attended a number of sessions with a psychologist, he ultimately stopped participating in treatment, calling the process "worthless." Carey also declined to follow the evaluator's recommendation to see a licensed psychiatrist regarding his ADHD. On these grounds, the single justice concluded that Carey had violated the mental health provisions of the 2016 order.[16]

### 3. Failure to Comply with the Interim Suspension Order (Counts 3 and 5)

[¶20] The single justice also found that Carey had violated the April 2018 order of interim suspension in a number of ways. Despite the requirement in the order that Carey "cease all operations of any and all of his websites, any Facebook account(s) relating or referring to his practice as a lawyer, and any other form of advertising of his legal services during the period of this suspension," Carey did not do so. Additionally, Carey violated the suspension order by representing or attempting to represent clients after the suspension

---

[16] Although the Board had alleged that Carey's notification of the Board regarding the District Court's entry of the protection order against him, *see supra* n.9, did not meet the notification requirement included as a condition of the 2016 order, the single justice found that the Board did not prove that allegation.

became effective. For example, in early May of 2018, despite knowing that his license to practice was suspended, Carey signed a complaint on behalf of a client and submitted the pleading for filing with the court—a filing that the court rejected because Carey was not authorized to practice law. In the same case, after being suspended, Carey had two separate conversations with opposing counsel in which Carey stated that he was "calling as a paralegal" but then proceeded to discuss the merits of the case in a way that, the single justice found, "was not just tiptoeing along the line with respect to his suspension but [was] stepp[ing] over the line."

[¶21] In a different case, Carey was so active that the presiding judge issued an order prohibiting him from communicating with opposing counsel. And in yet another case, Carey attempted to file an appeal in a small claims matter "by adding himself as a party in the caption of the notice of appeal and signing the notice as the appellant (with 'Appellant's Attorney' crossed out)." That notice of appeal also was rejected by the presiding judge because of the status of Carey's license.

[¶22] Further, at least three times Carey wrote checks on one of his law office accounts despite the single justice's appointment of a receiver, who was given control of those accounts. Finally, the court found that Carey had

continued his campaign for election as District Attorney while knowing that he was prohibited from practicing law in Maine. Based on evidence of his campaign activities, the single justice found that Carey had implicitly represented to the public that he was a lawyer capable of serving as District Attorney, a role that requires the elected official to "make prosecutorial decisions, set policy and supervise the lawyers in the District Attorney's office."

[¶23] The single justice concluded that Carey's conduct during the interim suspension demonstrated that he had "acted in derogation of the court's interim suspension order and violated Rule 3.4(c) of the Rules of Professional Conduct by knowingly disobeying an obligation under the rules of a tribunal."[17]

B.    Sanctions

[¶24] Several months after entering the order concluding that Carey had violated the Rules of Professional Conduct as described above, the single justice held a hearing on sanctions. Following the sanctions hearing, on December 20, 2018, the single justice entered an order in which he analyzed each of Carey's violations, properly considering the factors set forth in both Maine Bar

---

[17] Rule 3.4(c) provides that "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

Rule 21(c) and the American Bar Association's Standards for Imposing Lawyer Sanctions (Am. Bar Ass'n 1992). The single justice determined that Carey's criminal or otherwise unlawful conduct that led to the order of protection from abuse and the majority of his willful violations of the interim suspension order could each warrant a suspension of his license. The single justice observed, however, that Carey's continued campaign for District Attorney after being suspended from practice, which could constitute "a serious interference to the legal system," and Carey's attempt to induce a witness to testify falsely or withhold information were all of sufficient gravity that could warrant a more profound judicial response—disbarment.[18] The single justice then weighed mitigating and aggravating circumstances—notably, Carey's "significant prior disciplinary history"—and, while concluding that disbarment would be an "entirely reasonable" sanction given the totality of Carey's violations, instead chose to impose a three-year suspension with conditions.

[¶25] Carey filed this appeal from the single justice's order on sanctions. *See* M. Bar R. 13(g)(4); *see also supra* n.1.

---

[18] The single justice concluded that Carey's violations of the 2016 order regarding his failure to follow the recommendations of the evaluating psychologist were intentional but not serious.

## II. DISCUSSION

[¶26]  We first address the Board's motion to dismiss Carey's appeal outright due to his violations of the Rules of Appellate Procedure and orders we have issued in this proceeding.  We then consider the merits of Carey's contentions on appeal.

A.    Motion to Dismiss

[¶27]  The Board has moved to dismiss this appeal.

[¶28]  In accordance with the schedule set for this appeal, Carey timely filed his brief and the first version of the appendix on April 5, 2019.  Three days later, we entered an order rejecting Carey's appendix, specifically noting that— among other defects—it contained neither the document that initiated the proceeding in the trial court nor all amendments to that initiating document, *see* M.R. App. P. 8(d)(4).  We ordered Carey to file a replacement appendix, emphasizing that "[*t*]*he deficiencies described above are not necessarily the only deficiencies*," and stating that "Carey must ensure that the replacement appendix *fully* complies with the rules and not merely that the deficiencies indicated above are fixed."  In the same order, we required that Carey file "a replacement brief that corrects the citations to the appendix *but that makes no*

*other changes.*" (Emphasis added.) Carey then filed a replacement appendix and brief.

[¶29] One week later, the Board filed a motion to dismiss the appeal on the grounds that neither Carey's replacement appendix nor his replacement brief comported with the Rules of Appellate Procedure, *see* M.R. App. P. 7A, 8, and that large portions of his replacement brief had been substantively rewritten in violation of our order.[19] We then issued a second order, stating in relevant part that we would consider the Board's motion to dismiss in conjunction with the merits of the appeal.

1.    The Replacement Appendix

[¶30] Carey's replacement appendix, which is more than three-hundred pages long, is affected by the following defects, among many others:

- There are differences among the copies of the appendix both in content and pagination, resulting in an inordinate and utterly unnecessary consumption of our time and attention in sorting through the many differences and determining what they are;

- The replacement appendix does not contain the order entered by the single justice on September 21, 2018, which sets out the factual findings and which is essential for us to resolve several of the issues on appeal, *see* M.R. App. P. 8(d)(3) (mandating the inclusion of "[e]ach trial court decision, ruling, or judgment that will be addressed in the appeal, including the original final judgment and any subsequent orders

---

[19]  Carey responded to the Board's motion to dismiss, but—despite the stakes involved in this case—his responsive filing was not timely.  *See* M.R. App. P. 10(c).

amending the original final judgment"); M.R. App. P. 8(d)(3)(B) ("If the decision or judgment includes more than one order or set of findings, a copy of each court action that constitutes the decision or judgment *shall be included*." (emphasis added)); M.R. App. P. 8(c) ("The purpose of the appendix is to make available to each Justice of the Court those documents from the record that are essential to the review of the issues on appeal.");

- It includes many pages of documents that were not offered or admitted in evidence during the trial proceedings nor otherwise provided to the trial court. Therefore, they are not a part of the trial court record or file, and are banned from the appendix, *see* M.R. App. P. 8(g)(1); *see also Major v. Wen Yih Chiang*, 2015 ME 26, ¶¶ 4-5, 113 A.3d 228 (dismissing an appeal because the appellant's second amended appendix contained documents that were not a part of the trial court file or record);

- It also violates various other provisions of Rule 8 of the appellate rules, including Rule 8(g)(2)(C) (prohibiting the inclusion of pictures depicting nudity or sexual or sexualized acts in the appendix).

2.     The Replacement Brief

[¶31] As is noted above, we also ordered Carey to file a replacement brief that made no changes to his original brief except to update references to the replacement appendix. Instead, Carey submitted a replacement brief that includes significant and substantive changes, including the deletion of entire paragraphs and sections that are rewritten. Carey contends that the changes are "minor corrective and contextual edits" and are "a natural extension occurring as a result of the Court's directive to alter the appendix." That

characterization of his violations of our order is false. The reality is that Carey patently violated an order of this Court.

3.      Conclusion on the Board's Motion

[¶32]  In this case, where his professional license and livelihood are on the line, Carey has demonstrated an unwillingness to comply both with the rules governing appellate procedure and with an order issued by us—the court of last resort—governing the procedure in this appeal. In other types of cases, we might well grant a motion to dismiss an appeal that has been prosecuted as poorly and irresponsibly as this one. In this case, however, we are acutely mindful of the critical mission of ensuring that the public is served by members of a bar who are held to the core ethical standards that define and are integral to the legal profession. As we discuss below, the shortcomings in Carey's presentation on this appeal will make it impossible for us to reach many of his contentions in a meaningful way. Nonetheless, to promote the fundamental objective of promoting public confidence in the justice system, we exercise our discretion by reaching the merits of his challenges to the extent the record allows us to do so and shining a light on Carey's professional misconduct, rather than dismissing the appeal on procedural grounds.

B.      Merits of the Challenges on Appeal

[¶33]    Carey challenges numerous aspects of the single justice's judgment.  Many of the issues he raises, however, were not properly preserved for review, making meaningful analysis difficult, if not impossible.  And many of Carey's assertions reflect fundamental misunderstandings of the trial proceedings and the single justice's orders.  We will not address the issues that Carey failed to preserve. *See Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 9, 165 A.3d 357; *Landis v. Hannaford Bros. Co.*, 2000 ME 111, ¶ 13, 754 A.2d 958.

[¶34]    Further, with respect to his challenges to the single justice's determination of sanctions, Carey has failed to include in the record the transcript of the hearing on sanctions, which led to the order that Carey challenges on appeal.  We therefore "must assume that the [single justice's] findings are supported by competent evidence in the record."  *McGarvey v. McGarvey*, 2019 ME 40, ¶ 5, 204 A.3d 1276; *see also Springer v. Springer*, 2009 ME 118, ¶¶ 2-3, 8, 984 A.2d 828.

[¶35]    To the extent that Carey has properly preserved issues for our review, we find no error in any of the single justice's findings of fact, his legal determinations and conclusions, his discretionary calls, and his management of

the proceedings. All the factual findings contained in the September order are supported by competent record evidence, and the December order presents a measured and thoughtful analysis of Carey's conduct and determination of the nature and duration of the sanctions imposed for Carey's ethical violations.

[¶36] In the sanctions order, the single justice correctly stated that the purpose of lawyer discipline is not punishment but protection of the public and the courts, *see Bd. of Overseers of the Bar v. Rodway*, 470 A.2d 790, 791 (Me. 1984), and he then addressed each of the factors that the Bar Rules require to be considered, *see* M. Bar R. 21(c). No matter the view one takes of the application of the ABA Standards for Imposing Lawyer Sanctions—whether formulaic or conceptual, *see Bd. of Overseers of the Bar v. White*, 2019 ME 91, ¶ 4, ---A.3d---; *see also Prolman*, 2018 ME 128, ¶ 25, 193 A.3d 808—a three-year suspension of Carey's license to practice is not an inappropriate sanction. As the single justice correctly observed, disbarment would not have been inappropriate. Nonetheless, the single justice did not err by imposing a more moderate sanction that is tailored to reasonably protect the public and the courts, while still allowing Carey the opportunity to rehabilitate and demonstrate a capacity to abide by the rules and ethical standards that govern the conduct of all attorneys licensed to practice in Maine—a demonstration that

Carey will need to make in order to re-enter the practice of law after at least three years, pursuant to Maine Bar Rule 29.[20]

The entry is:

Motion to dismiss denied. Judgment affirmed.

---

Seth T. Carey, appellant pro se

Aria Eee, Esq., Board of Overseers of the Bar, Augusta, for appellee Board of Overseers of the Bar

Maine Supreme Judicial Court docket numbers Bar-16-15 and Bar-18-4

---

[20] Reinstatement will not be automatic. Pursuant to Rule 29(a), an attorney whose license has been suspended for more than six months may petition for reinstatement no earlier than six months before the period of suspension is set to expire. In order to then qualify for reinstatement, the attorney must demonstrate—among other things—that he or she has fully complied with the terms and conditions of all prior disciplinary orders; has not engaged or attempted to engage in the unauthorized practice of law while suspended; has recognized the wrongfulness and seriousness of the misconduct for which the attorney was suspended; has not engaged in any other professional misconduct since the suspension; and demonstrates the requisite honesty and integrity to practice law. M. Bar R. 29(e).