MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2023 ME 58
Docket:         Cum-22-404
Argued:         July 6, 2023
Decided:        August 24, 2023

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.


BOARD OF OVERSEERS OF THE BAR

v.

DONALD F. BROWN


PER CURIAM

[¶1]  Donald F. Brown appeals from a judgment of a single justice (*McKeon, J.*) finding that he violated the Maine Rules of Professional Conduct and the Maine Bar Rules and imposing a public reprimand and a one-year suspended suspension.[1]  *See* M. Bar R. 13(g)(4).  Brown challenges the sufficiency of the evidence supporting the single justice's findings, argues that the single justice erred and abused his discretion in applying the Maine Rules of Professional Conduct and the Maine Bar Rules, and asserts that the single justice imposed inappropriate sanctions.  The Board of Overseers of the Bar moves to dismiss the appeal, arguing that its motion for clarification and further

---

[1]  We may review a single justice's findings and conclusions order and subsequent sanctions orders together as a final judgment.  *See Bd. of Overseers of the Bar v. Carey*, 2019 ME 136, ¶ 2 & n.1, 215 A.3d 229; M. Bar R. 13(g)(4).

order did not extend the timeline for filing an appeal.  We hold that the appeal was timely filed and affirm the judgment.

## I. BACKGROUND

### A.    Factual Findings

[¶2]  The single justice made the following factual findings, which are supported by competent record evidence.  *See Bd. of Overseers of the Bar v. Prolman*, 2018 ME 128, ¶ 2, 193 A.3d 808; *Bd. of Overseers of the Bar v. Brown*, 623 A.2d 1268, 1270 (Me. 1993).

#### 1.    Count 1 (CLE Violation)

[¶3]  Brown has been licensed to practice in Maine since 1997.  He is a solo practitioner who maintains an office in Brewer and currently employs two part-time support staff.  Around February 24, 2020, Brown became aware that he did not have any continuing legal education (CLE) credits for the 2019 calendar year.  Maine Bar Rule 5 required Brown to earn twelve credits by February 28, 2020.[2]  Brown reached out to the Board to determine how he could obtain the necessary credits by the deadline.  The Board pointed him

---

[2]  Maine Bar Rule 5(c)(1) provides that every attorney licensed to practice in Maine "shall be required to earn a minimum of 12 MCLE credit hours per calendar year.  No more than five of the credit hours may be earned through self-study programs as defined in Rule 5(h)(1)(B)."  In addition, "[e]ach year, attorneys subject to [the Maine Bar Rules] shall certify the accuracy of their individual [Maine Continuing Legal Education] Annual Report Statement to the CLE Committee no later than the close of business on the last business day of February."  M. Bar. R. 5(e)(3).

toward several third-party CLE providers. Brown chose a service named Lorman Education Services and purchased an all-access pass which gave him access to both "live" and "self-study" courses, all of which were online. Under Maine Bar Rule 5(c)(1), seven of the twelve CLE credits must be earned through live, as opposed to self-study, programs.

[¶4] Brown signed up for four live courses and five self-study courses with Lorman. Brown soon realized, however, that he had scheduling conflicts with some of the live courses. Brown asked a support staff person, Tammy May, to sign on using Brown's credentials to the live online courses that Brown could not attend. May understood that her role was to complete the live CLE courses for Brown. In accordance with Brown's request, May completed at least three of Brown's live CLE courses on February 25, 26, and 28, 2020. Brown then "allowed Lorman to report" to the Board that he had attended those live CLE courses. After May filed a complaint against Brown with the Board and after the Board extended the deadline for 2020 CLE completion due to the COVID-19 pandemic, Brown attended sufficient programs to meet his live CLE requirement.

4

## 2. Count 2 (Representation of T.F.)

[¶5] Brown first began a sexual relationship with T.F. in 2014. At some point after Brown and T.F. met, T.F. married M.P. T.F. and M.P. had a child in 2017, and during the pregnancy there was a gap in Brown and T.F.'s relationship. In 2018, T.F. retained Brown to file a motion to enforce a marital property distribution she was entitled to as part of her previous divorce from another man. Brown and T.F. then resumed having a sexual relationship while Brown represented T.F. on the motion to enforce.

[¶6] T.F. moved out of her home with M.P. in the late summer to early fall of 2019. At that time, Brown and T.F. were still engaging in periodic sexual relations. Also in the fall of 2019, Brown began representing T.F. in her divorce from M.P., a protection from abuse action against M.P., and an unrelated foreclosure action. Around this time, T.F. also began working for Brown on a part-time basis.

[¶7] Before Brown began representing T.F. in her divorce action from M.P., T.F. and Brown discussed the ethical rule regarding sexual relations with a client. *See* M.R. Prof. Conduct 1.8(j).[3] After doing so, Brown did not believe it

---

[3] "A lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced." M.R. Prof. Conduct 1.8(j). The single justice did not find that Brown had violated this rule.

would be a conflict of interest for him to represent T.F. in her divorce, and T.F. was comfortable with Brown representing her in the matter. Brown never obtained T.F.'s consent to the representation in writing.

[¶8] Starting around the fall or winter of 2019, Brown and T.F. began staying at each other's homes often. As a result, Brown regularly saw T.F. and M.P.'s minor child and regularly discussed the circumstances of T.F. and M.P.'s divorce with T.F.

[¶9] During the pendency of the divorce action and shortly after signing on to the CLE classes for Brown, May stopped working for Brown. On March 11, 2020, May contacted M.P.'s divorce attorney to say that she had information that could help M.P. M.P.'s attorney agreed to speak with May, and May provided him with information about Brown's relationship with T.F. M.P.'s attorney was concerned that Brown and T.F.'s relationship was contributing to the contentiousness of the divorce. At an interim divorce hearing the following day, March 12, 2020, testimony about Brown's relationship with T.F. was presented, and as a result the family law magistrate called a recess to speak with Brown and M.P.'s attorney. The magistrate advised both Brown and M.P.'s attorney to contact Bar Counsel to inquire whether their actions conformed to Maine's ethical rules. Brown talked with an Assistant Bar Counsel who

6

cautioned him that continuing to represent T.F. could constitute a personal conflict of interest.

[¶10]  After the interim hearing, Brown moved to disqualify M.P.'s attorney.  At a hearing on that motion in July 2020, Brown confirmed that he was now cohabitating with T.F. and her child.  Brown and T.F. later agreed it would be best if Brown withdrew from representing her.  Brown withdrew his motion to disqualify M.P.'s attorney and withdrew as T.F.'s counsel in the divorce matter.

## B.    Procedural History

[¶11]  In March 2020, May filed a bar complaint against Brown, alleging multiple instances of misconduct.  Bar Counsel recommended that formal charges be filed against Brown.  *See* M. Bar R. 13(b)(1)(F).  In November 2020, a panel of the Grievance Commission reviewed the allegations and approved Bar Counsel's recommendation for the filing of formal charges. On August 25 and 26, 2021, a second panel of the Grievance Commission held a hearing on the matter.  On September 30, 2021, that second panel filed a finding of probable cause and directed Bar Counsel to file an information with the court pursuant to Maine Bar Rule 13(g)(1).  *See* M. Bar R. 13(e)(10)(E).  On January 10, 2022, Bar Counsel filed a three-count information with the

Executive Clerk of the Supreme Judicial Court. Count 1 alleged that Brown violated the Maine Bar Rules and the Maine Rules of Professional Conduct with regard to his continuing legal education. Count 2 alleged that Brown violated the Maine Rules of Professional Conduct with regard to his representation of T.F. Count 3 alleged that, in a matter unrelated to Counts 1 and 2, Brown misrepresented circumstances in a motion to continue.

[¶12] Following a hearing on July 19 and 21, 2022, the single justice issued an order finding that the Board proved Counts 1 and 2 by a preponderance of the evidence.[4] Based on the evidence produced at the hearing, the single justice concluded that with respect to Count 1, regarding his CLE requirements, Brown violated Maine Bar Rule 5(e)(3)[5] and Maine Rules of Professional Conduct 8.4(a)[6] and 8.4(c).[7] The single justice also concluded

---

[4] The single justice found in Brown's favor on Count 3.

[5] "Each year, attorneys subject to [the Maine Bar Rules] shall certify the accuracy of their individual MCLE Annual Report Statement to the CLE Committee no later than the close of business on the last business day of February." M. Bar. R. 5(e)(3).

[6] "It is professional misconduct for a lawyer to: (a) violate or attempt to violate any provision of either the Maine Rules of Professional Conduct or the Maine Bar Rules, or knowingly assist or induce another to do so, or do so through the acts of another." M.R. Prof. Conduct 8.4(a).

[7] "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." M.R. Prof. Conduct 8.4(c).

Brown violated Maine Rules of Professional Conduct 1.7(a)(2)[8] and 8.4(a) with respect to Count 2 and his representation of T.F.

[¶13] The single justice issued a separate sanctions order on October 6, 2022. Regarding Count 1, the single justice suspended Brown from the practice of law for one year. Brown's suspension was fully suspended subject to several conditions, including that (1) within twenty-one days, the parties would agree on a monitor who would confirm Brown's compliance with the court's order through monthly reports to the Board and report any violation by Brown of the order, the Maine Bar Rules, or the Maine Rules of Professional Conduct; and (2) Brown would fully reimburse the Board for costs recoverable under Maine Bar Rule 22. Regarding Count 2, the single justice imposed a public reprimand.

[¶14] On October 20, 2022, the Board filed a "Motion for Clarification & Further Order," without citation to authority, and requested that the single justice "impose a deadline for [Brown's] reimbursement of costs, require [Brown] to bear any associated costs of monitoring and order that Bar Counsel['s] office, or the Court, be permitted to select a monitor in the event the

---

[8] "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest. A concurrent conflict-of-interest exists if . . . there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." M.R. Prof. Conduct 1.7(a)(2).

parties [could not] reach agreement [on a monitor] after twenty-one (21) days." On November 23, 2022, the single justice held a hearing on the motion for clarification and issued an order on that motion together with an order governing Brown's probation and monitoring. The single justice ordered Brown to fully reimburse the Board for costs recoverable under Maine Bar Rule 22 within twenty-one days, ordered Brown to assume all costs incurred to effectuate the monitoring requirements in the sanctions order, and ordered that Bar Counsel select a monitor in the event the parties could not agree on a monitor within twenty-one days. The orders were entered on the docket on November 23, 2022, and Brown filed his notice of appeal twenty-one days later, on December 14, 2022. *See* M. Bar R. 13(g)(4). The Board moved to dismiss the appeal as untimely pursuant to Maine Rule of Appellate Procedure 2B(c)(1) on December 20, 2022.

## II. DISCUSSION

### A. Motion to Dismiss

[¶15] The Board contends that Brown's appeal is untimely and should be dismissed. Brown argues that his appeal is timely because it was filed within twenty-one days of the entry of the order on the Board's motion for clarification. According to Brown, the time for filing the notice of appeal in this

case was extended pursuant to Maine Rule of Appellate Procedure 2B(c)(2)(D) because the Board's motion for clarification is properly characterized as a motion to alter or amend a judgment under Maine Rule of Civil Procedure 59(e). The Board counters that Rule 2B(c)(2) does not apply and its motion is most accurately characterized as a motion for relief from a judgment or order under Maine Rule of Civil Procedure 60, which would not extend the time for filing an appeal.

[¶16] We will not entertain an appeal if the appealing party fails to strictly comply with the time limits outlined in Rule 2B. *Bourke v. City of S. Portland*, 2002 ME 155, ¶ 4, 806 A.2d 1255. Under Rule 2B(c)(1), "an appeal may be taken in a civil case . . . 21 days after entry into the docket of the judgment or order appealed from." Pursuant to Rule 2B(c)(2), the filing of certain post-judgment motions, including a motion to alter or amend a judgment, can extend that timeline. If one of those motions is timely filed after judgment,

> a notice of appeal need not be filed within 21 days after entry of judgment. Instead, a notice of appeal may be filed at any time after the entry of judgment but not later than 21 days after the entry of the order on the motion. A notice of appeal so filed shall be treated as an appeal from both the judgment and the order on the motion . . . .

M.R. App. P. 2B(c)(2).

[¶17]   Where, as here, a party does not cite to a specific authority or procedural rule for its motion,[9] we look to the relief requested and the intention of the motion to determine how to classify it.   *See Levesque v. Levesque*, 1997 ME 166, ¶ 9, 697 A.2d 1309; *State v. O'Neal*, 432 A.2d 1278, 1280 (Me. 1981); *Palacci v. Palacci*, 613 A.2d 951, 953-54 (Me. 1992).

[¶18]   Rule 59(e) is quite broad and allows the court to alter or amend a judgment to correct an error or "to reach what the revising court deems a more just result."   *Most v. Most*, 477 A.2d 250, 258 (Me. 1984); *see Brown v. Manchester*, 384 A.2d 449, 454 n.5 (Me. 1978) ("Anything which would persuade the judge sitting in a bench hearing to modify a previous judgment is open to his consideration on a timely filed Rule 59(e) motion."); *see also Theberge v. Theberge,* 2010 ME 132, ¶ 27, 9 A.3d 809 (affirming a court's amendment of a spousal support obligation pursuant to Rule 59(e)); *MacDowall v. MMG Ins. Co.,* 2007 ME 56, ¶¶ 6, 15, 920 A.2d 1044 (affirming a court's amendment of a judgment to include interest and costs pursuant to Rule 59(e)).

---

[9]  A movant is required to "state with particularity . . . the rule or statute invoked if the motion is brought pursuant to a rule or statute."  M.R. Civ. P. 7(b)(1).

12

[¶19]  By contrast, Rule 60(a) allows the court to correct inadvertent clerical errors, *see, e.g., Beedle v. Beedle*, 2022 ME 45, ¶¶ 8-9, 279 A.3d 399, and Rule 60(b) "permits the court . . . to relieve a party from final judgment for any of the six reasons articulated in the rule," *Merrill v. Merrill*, 449 A.2d 1120, 1125 (Me. 1982).

[¶20]  The Board's motion for clarification did not ask the single justice to correct a clerical error and did not seek to relieve the Board from the judgment.  Instead, the Board asked the single justice to add to the sanctions order by imposing a deadline for Brown's reimbursement of costs, requiring Brown to pay costs associated with monitoring, and permitting Bar Counsel or the single justice to select a monitor in the event a monitor was not agreed upon within twenty-one days of the sanctions order.  Because the motion requested that the single justice make changes to the sanctions order rather than requesting that the Board be relieved from it, the motion is more properly characterized as a timely-filed motion to alter or amend a judgment.  *See* M.R. Civ. P. 59(e).  Accordingly, the timeline for Brown's appeal was extended pursuant to Rule 2B(c)(2)(D) of the Maine Rules of Appellate Procedure, and Brown timely appealed the single justice's judgment when he filed his appeal

within twenty-one days of the single justice's order on the Board's motion for clarification.

## B. Count 1 (CLE Violation)

[¶21] Brown asserts the single justice erred in his findings regarding Brown's CLE violation. Brown insists that he inadvertently misrepresented his CLE credits to the Board because he misunderstood the Maine Bar Rules regarding CLE courses. He further argues that because he later viewed the live courses and attended other live programs, he completed his CLE requirements before the extended deadline expired and "cured" any violation of Maine Bar Rule 5.

[¶22] The single justice found that a "pattern of electronic communication is strong evidence that May was assigned, by Brown, to complete his CLE[] for him. The text messages contained no suggestion she was simply 'downloading' [the live CLE courses] so he could review them later." The single justice found that Brown misrepresented his CLE credits to the Board when "he allowed Lorman to report" to the Board that he had completed the live CLE programs attended by May. The single justice also specifically found that "[a]sking that May complete the courses for him is conduct involving dishonesty, fraud, deceit or misrepresentation." (Quotation marks omitted.) It

is Brown's dishonest conduct that led to the imposition of the significant sanction, not a mere misunderstanding of the difference between live and self-study programs.

[¶23] We will uphold the findings and inferences of the single justice "unless they are clearly erroneous." *Bd. of Overseers of the Bar v. Dineen*, 500 A.2d 262, 264 (Me. 1985). A finding is clearly erroneous when no competent record evidence supports it. *See Brown*, 623 A.2d at 1270. We find no error in any of the single justice's factual findings regarding Count 1, which are amply supported by competent record evidence.

## C.    Count 2 (Representation of T.F.)

[¶24] Brown argues the single justice erred and abused his discretion in determining that Brown's representation of T.F. violated Maine Rule of Professional Conduct 1.7(a)(2). Contrary to Brown's contentions, the single justice's factual findings regarding Brown's representation of T.F. are supported by competent record evidence, and we find no error. *See Dineen*, 500 A.2d at 264.

[¶25] We interpret the meaning of the Maine Rules of Professional Conduct de novo, *cf. In re Prolman*, 2022 ME 25, ¶ 8, 273 A.3d 352 (providing that we interpret the Maine Bar Rules de novo), and review the single justice's

overall determination for an abuse of discretion, *id.* ¶ 9. Pursuant to Rule 1.7(a)(2),

> a lawyer shall not represent a client if the representation involves a concurrent conflict-of-interest. A concurrent conflict-of-interest exists if . . . there is a *significant risk that the representation of one or more clients would be materially limited* by the lawyer's responsibilities to another client, a former client or a third person or *by a personal interest of the lawyer.*

(Emphasis added.) Paragraph b of the Rule provides that a lawyer may represent a client despite a concurrent conflict-of-interest if two conditions are met: "(1) the lawyer reasonably believes that the lawyer would be able to provide competent and diligent representation to each affected client; and (2) each affected client gives informed consent, confirmed in writing." M.R. Prof. Conduct 1.7(b). The plain language of the Rule makes clear that if there is a significant risk that the representation of a client would be materially limited by the attorney's personal interest, the attorney should not represent that client, unless the attorney complies with paragraph b. *See Prolman*, 2018 ME 128, ¶ 37, 193 A.3d 808 (Jabar, J. concurring) ("If the language of the rule is unambiguous, we apply its plain meaning."). Comment 12 of the Rule further states that a sexual relationship between an attorney and client in fact presents such a risk because there is "a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client

16

without impairment of the exercise of independent professional judgment."
M.R. Prof. Conduct 1.7 cmt. (12).

[¶26] Neither party contends that there is a per se rule that a sexual relationship between an attorney and client creates a conflict of interest.[10] Instead, Rule 1.7 and comment 12 demonstrate that there are situations where an attorney's personal interest may limit that attorney's ability to provide sound, independent legal counsel to a client with whom the attorney is having a sexual relationship. Of course, whether such a conflict of interest exists depends upon on the circumstances and context of the representation.

[¶27] For example, if Brown represented T.F. in a small claims action against an auto shop for its failure to fix her car, the risk that Brown's independent judgment would be materially limited may be smaller than the risk associated with representing her in the divorce action. Brown would not necessarily be emotionally involved in the outcome of the small claims action, and there would be less risk that his emotional involvement would hinder his ability to provide T.F. with sound, independent legal representation. Here, however, the evidence and factual findings support the single justice's

---

[10] In contrast, Maine Rule of Professional Conduct 1.8(j) creates a per se rule, not applicable here, that prohibits an attorney from having sexual relations with a client with whom the attorney did not have a consensual sexual relationship before commencement of the attorney-client relationship. *See supra* n.3.

conclusion that there was a significant risk that Brown's emotional involvement would limit his ability to fully and independently advise T.F. in her divorce case. Brown's and T.F.'s lives were intertwined while Brown represented her in the divorce action: at the beginning, the two were having sexual relations; as the representation went on, they started regularly staying at each other's homes; and, ultimately, they began cohabitating with T.F. and M.P.'s child. In addition, Brown's position as T.F.'s lawyer fueled the overall contentiousness of the divorce proceedings. Indeed, there was also a potential that he could be a witness.

[¶28] As the single justice noted, the facts show that there was a significant risk that Brown could not give independent legal counsel to T.F. because the outcome of the divorce case would have a direct impact on Brown's own home and personal life. Despite this reality, Brown continued to represent T.F. and waited until July 2020 to withdraw. Brown also failed to remedy the conflict pursuant to Rule 1.7(b) because, even if he reasonably believed that he could provide competent and diligent representation to T.F., he failed to obtain her consent in writing as the rule requires. In sum, we discern no error or abuse of discretion in the single justice's determination that Brown violated the commands of Rule 1.7(a)(2).

## D.     Sanctions Order and Probation and Monitoring Order

[¶29]  In imposing sanctions for Counts 1 and 2 in this case, the single justice appropriately applied the four prongs of Maine Bar Rule 21(c) and looked to the American Bar Association's Standards for Imposing Lawyer Sanctions for additional guidance.  *See Prolman*, 2018 ME 128, ¶¶ 24-25, 193 A.3d 808; *Bd. of Overseers of the Bar v. White*, 2019 ME 91, ¶ 4, 210 A.3d 168; *Bd. of Overseers of the Bar v. Carey*, 2019 ME 136, ¶ 36, 215 A.3d 229.  A one-year suspended suspension of Brown's license, with its accompanying probation and monitoring order, was not an inappropriate sanction for Count 1. Likewise, a public reprimand was not an inappropriate sanction for Count 2. Put simply, the sanctions applied here were "neither overly harsh nor outside of the [single justice's] broad discretion."  *White*, 2019 ME 91, ¶ 4, 210 A.3d 168.

The entry is:

> Motion to dismiss appeal denied.  Judgment affirmed.

---

James M. Bowie, Esq. (orally), Thompson Bowie & Hatch LLC, Portland, for appellant Donald F. Brown

Suzanne E. Thompson, Asst. Bar Counsel (orally), Board of Overseers of the Bar, Augusta, for appellee Board of Overseers of the Bar